

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E.S. ORIGINALS INC.,

    Plaintiff,

- against -

TOTES ISOTONER CORPORATION,

    Defendant.

**OPINION AND ORDER**

08 Civ. 1945 (PKL)

**APPEARANCES**

LOWENSTEIN SANDLER PC
1251 Avenue of the Americas
New York, New York 10020
Steven M. Hecht, Esq.
Jeffery J. Wild, Esq.

**Attorneys for Plaintiff E.S. Originals, Inc.**

COHEN & GRESSER LLP
100 Park Avenue
New York, New York 10017
Mark S. Cohen, Esq.
Daniel H. Tabak, Esq.
Oliver Haker, Esq.

**Attorneys for Defendant Totes Isotoner Corporation**

**LEISURE, District Judge.**

This is a diversity action for:  (i) breach of contract;

(ii) breach of the implied covenant of good faith and fair

dealing; and (iii) indemnification.  Defendant, Totes Isotoner

Corp. ("Totes"), moves to dismiss each of plaintiff's, E.S.

Originals Inc.'s ("ESO"), causes of action for lack of subject

matter jurisdiction.  Alternatively, Totes moves to compel

arbitration and to stay this action pending the outcome of the

arbitration.  In the second alternative, Totes moves pursuant to

Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss

each of ESO's causes of action for failure to state a claim.

For the reasons stated below, Totes's motion to dismiss ESO's

causes of action for lack of subject matter jurisdiction is

DENIED; Totes's motion to compel arbitration is GRANTED; and,

because all claims are sent to arbitration, Totes's motion to

dismiss ESO's causes of action for failure to state a claim is

DENIED as moot.

## BACKGROUND

### I.   Facts

The following facts are taken from the pleadings and do not

constitute the findings of the Court.  ESO is a New York

corporation with its principal place of business located in New

York, New York.  (Compl. ¶ 2.)  Totes is an Ohio corporation

with its principal place of business located in Cincinnati, Ohio. (Id. ¶ 3.)

This is an action to compel Totes to comply with its contractual obligations to provide ESO with access to Totes's books and records, pursuant to the terms of an Asset Purchase Agreement between the parties dated October 6, 2006 (the "Agreement"). (Id. ¶ 1.)  Under the Agreement, ESO agreed to sell, and Totes agreed to purchase, certain of ESO's business and proprietary assets, goodwill, and other rights. (Id. ¶ 6.) Totes agreed to purchase these assets for multiple forms of consideration, including various "earn-out" payments. (Id. ¶ 7.)  For the one-year period of September 30, 2006, through September 30, 2007, (the "First Earn-Out Period"), ESO could receive from Totes three types of earn-out payments-the (1) "First Earn-Out Payment," (2) "Federated Earn-Out Payment," and (3) "Direct Import Earn-Out Payment." (Id. ¶ 8.)  The First Earn-Out Payment was to be $3,375,000 and was payable to ESO if two criteria were met:  (a) "Net Sales" for the First Earn-Out Period must have equaled or exceeded $60,800,000, and (b) "Landed Net Sales" must have equaled or exceeded $29,200,000. (Id. ¶ 9.)  The Federated Earn-Out Payment was a payment equivalent to 5% of the Net Sales to one of ESO's customers, Federated Department Stores, Inc., for the First Earn-Out Period. (Id. ¶ 14.)  The third type of payment, the Direct

3

Import Earn-Out Payment, was to be a payment of 3% of certain sales to certain customers specified in the Agreement, conditioned upon satisfaction of the same criteria as the First Earn-Out Payment. (Id. ¶ 15.)

Paragraph 2.7 of the Agreement requires Totes to deliver a "Net Sales Statement" to ESO within sixty days following the last day of the First Earn-Out Period, setting forth Totes's calculation of Net Sales and Landed Net Sales for the First Earn-Out Period, to determine whether the criteria for each earn-out payment have been met. (Id. ¶¶ 16-17.) The Agreement also contains a provision for contesting findings in the Net Sales Statement. (Id. ¶ 17.) If the net effect of any dispute can alter the calculation of Net Sales by more than $250,000, ESO is required to deliver written notice of its dispute to Totes, asserting "'each disputed item, specifying the amount thereof in dispute and setting forth, in reasonable detail, the basis for each dispute.'" (Id. ¶ 18 (quoting Agreement ¶ 2.7(c)).) If such notice is not delivered to Totes within forty-five days of Totes's delivery of the Net Sales Statement to ESO, the Net Sales Statement can be deemed "'final, binding and conclusive on the parties.'" (Id. (quoting Agreement ¶ 2.7(c)).) After ESO sold its assets to Totes, ESO no longer had direct access to the books, records, and information necessary to determine Net Sales and other sales calculations. (Id. ¶

20.)  Accordingly, ESO and Totes agreed pursuant to Paragraph 2.7(e) of the Agreement to allow ESO access to "all of the books, records, and other information necessary to calculate any earn-out payments that may be due to ESO."  (Id. ¶¶ 21-22.)

On or about November 7, 2007, Totes delivered to ESO a Net Sales Statement with respect to the First Earn-Out Period (the "November Statement").  (Id. ¶ 24.)  According to Totes's calculations, Net Sales were $63,988,387 and Landed Net Sales were $27,650,450, thus not entitling ESO to the First Earn-Out Payment and Direct Import Earn-Out Payment because Landed Net Sales were less than $29,200,000.  (Id. ¶¶ 24-25.)  Based upon ESO's initial review of the November Statement, ESO believed there were various inaccuracies and miscalculations in the statement.  (Id. ¶ 26.)  To verify or dispute these calculations, ESO sought Totes's cooperation to access the books, records, and other information necessary to analyze the November Statement.  (Id. ¶¶ 26-27.)  ESO received little cooperation from Totes, however, and with the period of forty-five days from the date of delivery of the November Statement approaching, ESO notified Totes by letter of certain disputes with the November Statement.  (Id. ¶ 27.)  ESO also demanded in this letter that Totes comply with its contractual obligations to provide ESO with access to documents and information necessary to analyze the November Statement, so that ESO could

5

identify each disputed item and the basis for each dispute, as required by the Agreement. (Id. ¶ 28.)

After ESO delivered its letter to Totes, representatives of ESO's accounting firm, Weiser, LLP ("Weiser"), visited Totes's offices located in Cincinnati, Ohio on December 10-14, 2007, and again on January 3-4, 2008, to access and review various documents and information pertaining to the November Statement. (Id. ¶ 29.) Instead of complying with its contractual obligations, Totes made Weiser's review and analysis "difficult" and "burdensome," required Weiser to execute a Confidentiality Agreement, prohibited Weiser from making copies of any of Totes's information and records, and prevented access to several requested categories of documents and information. (Id. ¶¶ 31-33.) Weiser identified numerous discrepancies regarding Totes's books and records relating to the November Statement, including "several discrepancies among [Totes's] records suggesting that the ship dates for customer purchases . . . were intentionally delayed, so that corresponding sales would not be included in determining ESO's right to the First Earn-Out Payment." (Id. ¶¶ 34-35 (emphasis in original).) These discrepancies impacted the calculation of Net Sales by over $1.6 million, meaning that ESO should have been entitled to receive the First Earn-Out Payment of $3,375,000 plus the Direct Import Earn-Out Payment. (Id. ¶ 37.)

In light of this determination, ESO wrote to Totes on January 18, 2008, to further expand upon ESO's disputes with the November Statement. (Id. ¶ 39.)  ESO also asked Totes to provide ESO with access to the information that ESO previously had requested to complete ESO's analysis of the November Statement, which Totes never provided.  (Id.)  In response to ESO's letter, Totes wrote to ESO on January 21, 2008, and disputed certain discrepancies identified by ESO, denied the existence of certain documents requested by ESO, and refused to provide ESO with other requested information.  (Id. ¶ 40.)  ESO again wrote to Totes on January 30, 2008, explaining in detail the nature of the disputes that it had been able to identify, requesting documentary support for Totes's responses to the discrepancies identified by ESO, and reiterating its requests for access to other outstanding information from Totes pursuant to the terms of the Agreement.  (Id. ¶ 41.)  Totes responded to ESO on February 10, 2008, and persisted in its denial of ESO's disputes with the November Statement.  (Id. ¶ 43.)  Totes also conceded that certain information requested by ESO did in fact exist or had already been made available to ESO.  (Id. ¶ 44.)  "Moreover . . . [Totes] tacitly confirmed that other outstanding information that ESO had been requesting for several months was in fact available and/or could be accessed by [Totes]—but that [Totes] still refused to provide ESO with the requested

information." (Id.) ESO claims that Totes's conduct has precluded ESO "from engaging in any meaningful efforts to reconcile its disputes with [Totes] as contemplated by the Agreement" and is "a blatant attempt to withhold the evidence that confirms ESO's right to receive the First Earn-Out Payment, Direct Import Earn-Out Payment and Federated Earn-Out Payment." (Id. ¶¶ 45-46.)

On February 27, 2008, ESO initiated this action against Totes alleging express breach of contract, breach of the implied covenant of good faith and fair dealing, and indemnification. (Id. ¶¶ 47-64.) ESO seeks specific performance compelling Totes to comply with its contractual obligations pursuant to Paragraphs 2.7(e) and 9.1 of the Agreement, as well as compensatory, incidental, and consequential damages. (Id. ¶¶ (A)-(B).) ESO also requests pre-judgment interest, post-judgment interest, and "all of its expenses arising or resulting from [Totes's] breaches of its obligations under the Agreement." (Id. ¶¶ (C)-(D).)

## II. Totes's Arguments

### A.   Totes's Motion to Dismiss for Lack of Jurisdiction

Totes first moves to dismiss ESO's Complaint for lack of subject matter jurisdiction. (See Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss Compl. or Stay Action Pending Arbitration

8

("Def.'s Mem.") 2.)   Totes asserts that all of ESO's causes of
action mistakenly "presuppose that ESO can challenge the Net
Sales Statement."   (Id. 10.)   Totes argues that ESO did not
provide the detailed notice required by Paragraph 2.7 of the
Agreement in order to contest the Net Sales Statement properly,
rendering the Net Sales Statement "final, binding, and
conclusive" and precluding ESO from contesting the Statement.
(Id.)   Totes, therefore, contends that ESO's claims are moot and
the Court should dismiss this case for lack of subject matter
jurisdiction.   (Id.)

B.   Totes's Motion to Stay the Action Pending Arbitration

Even if the Court has jurisdiction, Totes argues that the
action should be stayed pending arbitration.   (Id. 12.)   Totes
asserts that "the Agreement's referral of any dispute on the
Potential Earn-Out Provisions to the Independent Accounting Firm
for a 'final, binding, and conclusive' resolution is an
arbitration clause within the meaning of the [Federal
Arbitration Act]."   (Id. 13.)   Totes contends that ESO's claims
fall within the scope of this arbitration clause, because each
claim "is based on a dispute over whether the Net Sales
Statement is correct and whether the Potential Earn-Out Payment
thresholds have been met."   (Id. 13-14.)   Totes declares that
ESO's claims "plainly touch upon the resolution of disputes over

Potential Earn-Out Payments in the arbitration clause" and "therefore should be stayed pending arbitration."  (Id. 14.)

## C.   Totes's Motion to Dismiss for Failure to State a Claim

In the event this Court both has jurisdiction over ESO's claims and declines to stay the action pending arbitration, Totes moves to dismiss ESO's Complaint for failure to state a claim pursuant to Rule 12(b)(6).  (Id. 15.)  Totes contends that ESO's breach of contract claim should be dismissed because a decree of specific performance would be "impermissibly vague and would result in an undue burden on this Court of monitoring disputes relating to compliance."  (Id. 17.)  Totes also argues that ESO has failed to plead damages for its breach of contract claim.  (Id. 18.)  Totes contends that ESO's implied covenant of good faith and fair dealing claim should be dismissed because it is redundant of ESO's breach of contract claim and "New York law does not recognize a good faith and fair dealing claim as an independent cause of action."  (Id. 19.)  Totes further argues that ESO's allegations that Totes manipulated records sound in fraud, and ESO has not pleaded these fraud allegations with the particularity required by Rule 9(b).  (See id. 20.)  Totes also contends that ESO's indemnification claim should be dismissed because it is derivative of the breach of contract cause of action, and because ESO fails to state a breach of contract

claim, the indemnification claim should be dismissed as well. (Id. 21.)  Finally, Totes argues that ESO's indemnification claim fails to state a cause of action as a matter of law because earn-out payment disputes are governed by Paragraph 2.7 of the Agreement, rather than the general indemnification provision invoked by ESO.  (Id. 21-22.)

## DISCUSSION

First, the Court addresses Totes's motion to dismiss the Complaint for lack of subject matter jurisdiction.  Second, after concluding that the Court has jurisdiction over this matter, the Court discusses the standard for compelling the parties to submit their claims to arbitration, and determines that this dispute is subject to arbitration by an Independent Accounting Firm as stipulated by the Agreement.

## I.   Totes's Motion to Dismiss for Lack of Jurisdiction

Totes asserts that this Court lacks subject matter jurisdiction because ESO failed to dispute the November Statement as required by the Agreement, rendering the Statement "final, binding, and conclusive," and that ESO is precluded from challenging it.  (See id. 9-10.)  Totes declares that "the claims in the Complaint are moot because the relief ESO seeks would not make a difference to the legal interests of the

parties," therefore, the Court should dismiss this case for lack of subject matter jurisdiction.  (Id. 10 (citation and internal quotation marks omitted).)

ESO contends that the Complaint does not state that ESO failed to dispute the November Statement properly; rather, "ESO allege[s] that it was prevented from providing more detail in its Dispute Notice because of [Totes's] failure to live up to its contractual obligations."  (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or Stay ("Pl.'s Opp'n") 10 (emphasis in original).)  ESO also argues that a "determination of whether ESO's Dispute Notice contained 'reasonable' detail is a fact issue that cannot possibly be resolved on a motion to dismiss." (Id.)

"[A] disputed issue of fact . . . is inappropriate to consider in the context of a Rule 12(b)(6) motion."  DiBlasio v. Novello, 344 F.3d 292, 304 (2d Cir. 2003); see also DeLuca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 63 (S.D.N.Y. 2010) (Leisure, J.) (same); Banks v. Corr. Servs. Corp., 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) (stating that, on a Rule 12(b)(6) motion, "[t]he Court's task 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof'" (quoting Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003))); Yajure v. DiMarzo, 130 F. Supp. 2d 568, 571-72

(S.D.N.Y. 2001) ("The role of a district court in considering a motion to dismiss is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." (citation and internal quotation marks omitted)).

The Court holds that whether ESO properly challenged the November Statement, or was impeded from doing so by Totes, is a factual dispute that is not appropriate for resolution on this motion to dismiss. Both parties dispute whether ESO failed to contest the November Statement properly, a question that turns on whether Totes prevented ESO from challenging the Statement by refusing access to its books and records. The Court cannot, and will not, address this factual dispute and, instead, "assume[s] the[] veracity" of ESO's well-pleaded allegation that it was prevented by Totes from acquiring the information necessary to dispute adequately the November Statement. Ashcroft v. Iqbal, - - U.S. --, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009); see also Compl. ¶¶ 28, 46. For the foregoing reasons, Totes's motion to dismiss for lack of subject matter jurisdiction is denied.

13

## II. Totes's Motion to Stay the Action Pending Arbitration

### A. Standard for Compelling Arbitration

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Determining whether a particular dispute is subject to arbitration requires interpreting the actual agreement between the parties. See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131 (2d Cir. 2003). The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008) (Ginsburg, J.). The preference for arbitration is so strong that, "under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" JLM Indus., Inc. v. Stolt-Nielsen

14

SA, 387 F.3d 163, 171 (2d Cir. 2004) (quoting Moses H. Cone
Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.
Ct. 927, 74 L. Ed. 2d 765 (1983) (Brennan, J.)).

In deciding whether any part of an action should be
directed to arbitration, this Court must determine:   (i) whether
the parties had an agreement to arbitrate; (ii) the scope of
that agreement; (iii) if federal statutory claims are asserted,
whether Congress intended those claims to be nonarbitrable; and
(iv) if some, but not all, of the claims are subject to
arbitration, whether to stay the balance of the proceedings
pending arbitration.   See JLM Indus., 387 F.3d at 169; Oldroyd
v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998).   To
determine whether a particular dispute falls within the scope of
an agreement's arbitration clause, a court should undertake a
three-part inquiry.   See Louis Dreyfus Negoce S.A. v. Blystad
Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).
"First, recognizing there is some range in the breadth of
arbitration clauses, a court should classify the particular
clause as either broad or narrow."   Id.; see also Chiarella v.
Vetta Sports, Inc., No. 94 Civ. 5933, 1994 WL 557114, at *4
(S.D.N.Y. Oct. 7, 1994) (Leisure, J.).   "Broad clauses purport
to refer to arbitration all disputes arising out of a contract,
while narrow clauses limit arbitration to a specific type of
dispute."   Chiarella, 1994 WL 557114, at *4; see also McDonnell

Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832

(2d Cir. 1988). Next, if concluding that an arbitration clause

is narrow, the court must determine whether the parties' dispute

is over an issue that "'is on its face within the purview of the

clause'" or over a collateral issue that is connected to the

main agreement containing the clause. Louis Dreyfus, 252 F.3d

at 224 (quoting Rochdale Vill., Inc. v. Pub. Serv. Employees

Union, 605 F.2d 1290, 1295 (2d Cir. 1979) (Kearse, J.)). Third,

when the arbitration clause is narrow, "a collateral matter will

generally be ruled beyond its purview." Louis Dreyfus, 252 F.3d

at 224; see also Cornell Univ. v. UAW Local 2300, 942 F.2d 138,

140 (2d Cir. 1991).


B.    ESO Must Submit Its Claims to Arbitration

    As a threshold issue, the Court finds that the parties had

an agreement to arbitrate. ESO agreed to arbitrate certain

disputes between itself and Totes by entering into the Agreement

with Totes, which provides in Paragraph 2.7(c):

> If [ESO] and [Totes] are unable to reach a
> resolution with respect to one or more
> disputed amounts within twenty (20) Business
> Days after receipt by [Totes] of [ESO's]
> written notice of dispute, [ESO] and [Totes]
> shall submit the item(s) remaining in
> dispute for resolution to the Independent
> Accounting Firm . . . .

16

(Def.'s Mem. Ex. B.)   The Court agrees with ESO that the scope of this arbitration clause is narrow, as it limits arbitration to a "specific type of dispute," Chiarella, 1994 WL 557114, at *4, here being a disagreement between ESO and Totes regarding earn-out payment calculations set forth in the Net Sales Statement.   (See Pl.'s Opp'n 15.)

"Because the arbitration clause is narrow, the next question is 'whether the dispute is over an issue that is on its face within the purview of the clause, or over some collateral issue that is somehow connected to the main agreement that contains the arbitration clause.'"   Negrin v. Kalina, No. 09 Civ. 6234, 2010 U.S. Dist. LEXIS 71068, at *16 (S.D.N.Y. July 15, 2010) (Jones, J.)   (quoting Louis Dreyfus Negoce, 252 F.3d at 224 (internal quotation marks omitted)); cf. ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 34 (2d Cir. 2002) ("'[W]hen parties use expansive language in drafting an arbitration clause, presumably they intend all issues that touch matters within the main agreement to be arbitrated, while the intended scope of a narrow arbitration clause is obviously more limited.'"   (quoting Louis Dreyfus, 252 F.3d at 225)).   "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, this Court 'focuses on the factual allegations in the complaint rather than the legal causes of action asserted.'"   Specht v. Netscape Comm. Corp., 306

F.3d 17, 36 (2d Cir. 2002) (Sotomayor, J.) (quoting Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987)); see also Abduljaami v. Legalmatch.com, Inc., No. 05 Civ. 9464, 2006 U.S. Dist. LEXIS 26327, at *12 (S.D.N.Y. Apr. 25, 2006) (Lynch, J.) ("When determining whether a claim is subject to arbitration, courts must look to the factual allegations in the complaint, not the causes of action asserted by the plaintiff."); JVN Music, Inc. v. Rodriguez, No. 99 Civ. 11889, 2000 U.S. Dist. LEXIS 8771, at *9-10 (S.D.N.Y. June 27, 2000) ("[W]hether a contractual arbitration agreement is deemed to be broad or narrow, a court must look to the factual allegations in the complaint rather than the legal claims asserted for aid in determining whether a specific issue is covered by the arbitration agreement.").

ESO argues that its claims are outside the narrow scope of the parties' arbitration clause and, therefore, its claims "fall squarely within the exclusive jurisdiction of this Court." (Pl.'s Mem. 15-16.)  The Court disagrees.  As explained below, the factual allegations in the Complaint focus almost entirely on issues related to accounting matters, and, are  on their face, within the purview of the arbitration clause.

ESO asserts that after visiting Totes's offices in December 2007 and January 2008, ESO's accountant, Weiser, "identified numerous, unexplained discrepancies and issues regarding

[Totes's] various books and records relating to the November
Statement, the First Earn-Out Payment and the Direct Import
Earn-Out Payment."  (Compl. ¶ 34.)  ESO also alleges that
"Weiser identified several discrepancies among [Totes's] records
suggesting that the ship dates for customer purchases . . . were
intentionally delayed, so that corresponding sales would not be
included in determining . . . the First Earn-Out Payment."  (Id.
¶ 35 (emphasis in original).)  ESO further invokes accounting
issues by declaring that "[Totes] improperly calculated Customer
Charge-backs," and Totes supports this allegation with an
extensive discussion comparing the GAAP calculation method
employed by Totes to the calculation method required by the
Agreement.  (Id. ¶ 36 (emphasis added).)  ESO goes on to
conclude that "[t]hese discrepancies and issues associated with
the November Statement impacted the calculation of Net Sales and
Landed Net Sales" by more than $1.6 million and "call into
dispute the accuracy of the November Statement in its entirety."
(Id. ¶¶ 37-38 (emphasis added).)  Thus, ESO's factual
allegations focus on financial discrepancies uncovered by ESO's
own accountant and call into question Totes's calculations in
the November Statement.  Instead of making a general remark
about potential errors in the November Statement, ESO ultimately
specifies the dollar amount of the purported calculation
discrepancy as over $1.6 million.  ESO also alleges that Totes

19

withheld from ESO important financial records and information pertaining to the November Statement.  (See Compl. ¶¶ 33, 41, 45, 46.)  In providing a high level of particularity in its factual allegations, ESO articulates a dispute that "is on its face within the purview of the [arbitration] clause" and appropriate for resolution by the accounting firm arbitrator specified by the Agreement.  Louis Dreyfus, 252 F.3d at 224 (citation and internal quotation marks omitted).

As mentioned above, Paragraph 2.7(c) of the Agreement provides that "[ESO] and [Totes] shall submit the item(s) remaining in dispute for resolution to the Independent Accounting Firm."  (Def.'s Mem. Ex. B.)  In the same paragraph of the Agreement is a description of the process by which ESO can dispute the November Statement, including that "[ESO] shall . . . notif[y] [Totes] . . . of each disputed item, specifying the amount thereof in dispute and setting forth, in reasonable detail, the basis for such dispute."  (Id.)  Juxtaposing these two provisions of Paragraph 2.7 indicate that "item" refers to not just a dollar amount discrepancy but also to an explanation for this discrepancy.  Therefore, ESO can submit to arbitration any contested dollar amounts in the November Statement as well as disputes concerning the financial documents and records ESO believes are necessary for resolving these discrepancies and determining whether ESO is entitled to any earn-out payments.

In light of ESO's factual allegations in the Complaint, the parties' dispute should be resolved by the accounting firm arbitrator called for by the Agreement.[1]

In arguing that its claims fall outside the scope of the parties arbitration provision, ESO relies upon McDonnell, 858 F.2d at 833 and XL Capital, Ltd. v. Kronenberg, 145 F. App'x 384, 385 (2d Cir. 2005), an unpublished decision.  In McDonnell, the defendant issued preferred stock pursuant to a share purchase agreement, in which the parties agreed that shareholders would remain eligible for dividend tax benefits. McDonnell, 858 F.2d at 827.  The parties agreed that if any shareholder were to lose these tax benefits, the defendant "would indemnify the shareholders for any economic loss below anticipated after-tax yields."  Id.  The agreement further

---

[1] ESO has failed to demonstrate that there are any unsatisfied conditions precedent that must be fulfilled prior to arbitration. See, e.g., Maxim Group, LLC v. Life Partners Holdings, Inc., No. 07 Civ. 8099, 2008 U.S. Dist. LEXIS 69274, at *4 (S.D.N.Y. Sept. 4, 2008) (Preska, J.) ("[C]onditions [precedent] are not favored under New York law, and in the absence of unambiguous language, a condition [precedent] will not be read into the agreement." (quoting Ginett v. Computer Task Group, 962 F.2d 1085, 1100 (2d Cir. 1992)). Furthermore, if a condition precedent did exist, ESO has not demonstrated that this would provide an obstacle to arbitration. See Oltchim, S.A. v. Velco Chemicals, Inc., 348 F.Supp.2d 97, 100 (S.D.N.Y. 2004) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide . . . issue of procedural arbitrability, i.e. whether prerequisites such as time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (citing Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002))  (emphasis added).

provided that any disagreement over the computation of indemnity payments be submitted to an independent tax counsel for arbitration. Id. The Second Circuit held that the plaintiffs' claims regarding the defendant's bad faith fell outside the scope of the arbitration clause, because "the effect of the clause should be limited to tax law questions and to the computation of the amount of any indemnity payments that the utility might owe its shareholders." Id. at 833.

In XL Capital, the plaintiffs sold stock to defendant on the condition that the plaintiffs could receive as additional consideration a future earn-out payment, referred to as the "Earned Payout Amount." See XL Capital, Ltd. v. Kronenberg, No. 04 Civ. 5496, 2004 WL 2101952, at *1 (S.D.N.Y. Sept. 20, 2004). The parties' stock purchase agreement required any dispute over the "Worksheet," which calculated the Earned Payout Amount, to be submitted to Ernst and Young for arbitration, while all other disputes were to be submitted to the American Arbitration Association (AAA). Id. at *2. Plaintiffs filed a demand for arbitration with the AAA, asserting claims of fraud, breach of contract, and breach of the covenant of good faith and fair dealing. Id. The Second Circuit held that these claims were appropriate for arbitration by the AAA because the choice of Ernst and Young as arbitrator limited the scope of that portion of the arbitration agreement to issues closely related to

22

accounting.  See XL Capital, 145 F. App'x at 385-86.  But the
Second Circuit clarified "that any portion of the dispute . . .
which turns on an objection to the Worksheet rather than an
objection to acts that have changed the facts on which the
Worksheet is based, must . . . be referred to [Ernst and Young]
for resolution."  Id. at 386.

ESO's reliance on McDonnell and XL Capital is unavailing.
ESO contends that its allegations of Totes's "bad-faith actions"
are analogous to the claims in McDonnell, and thus within the
jurisdiction of the Court.  (Pl.'s Opp'n 16.)  However, ESO's
dispute over earn-out payments are related directly to the
specific class of arbitrator referred to by the arbitration
clause.  Just as disagreements concerning the "computation of
the amount of any indemnity payments" were found suitable for a
specialist arbitrator in McDonnell, ESO's objections to earn-out
payment calculations are proper for resolution by an accounting
firm.

ESO's reliance on XL Capital similarly is misplaced.  The
breach of contract and good faith claims in XL Capital involved
allegations that the defendant had made fraudulent
misrepresentations in regard to earn-out payments and engaged in
other unlawful conduct, but the claims "did not challenge the
Worksheet as a matter of accounting."  XL Capital, 2004 WL
2101952, at *2.  Unlike the dispute in XL Capital, ESO

repeatedly contests calculations found in the November
Statement; the dispute, in its essence, concerns accounting
issues.  The arbitration clause designates an accounting firm to
arbitrate accounting issues, and objections to earn-out payment
calculations are, on their face, within the purview of this
clause.  Therefore, ESO's dispute with Totes must be submitted
to arbitration before the Independent Accounting Firm, rather
than this Court.

Because no federal statutory claims are asserted and no
lingering claims exist that are not subject to arbitration, the
Court holds that all of ESO's causes of action fall within the
scope of the arbitration provision found in the Agreement and
shall be determined at arbitration.  As a result, the Court does
not address Totes's motion to dismiss ESO's claims under Rule
12(b)(6).


## CONCLUSION

For the foregoing reasons, Totes's motion to dismiss ESO's
causes of action for lack of subject matter jurisdiction is
DENIED and Totes's motion to compel arbitration is GRANTED.
Because all of ESO's claims are to be decided at arbitration,
Totes's motion to dismiss for failure to state a claim is DENIED
as moot.  The Clerk of the Court is directed to close this
motion, docket no. 5, and close this case.

**SO ORDERED.**

New York, New York

August  19  2010

_____
                    U.S.D.J.